IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:17-CV-279-BO

| | | |
|---|---|---|
| K-FLEX, INC., | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| ARMACELL, INC., | ) | |
| Defendant. | ) | |

This matter is before the Court on defendant's motion to dismiss plaintiff's claims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure [DE 11]. The matter has been fully briefed and is ripe for ruling. For the reasons discussed below, the motion to dismiss is denied.

BACKGROUND

Defendant Armacell and plaintiff K-Flex both manufacture types of foam pipe insulation. Plaintiff exclusively manufactures elastomeric foam, which is derived from rubber. Defendant manufactures both elastomeric foam and polyethylene foam, known as PE foam. While both types are used for insulation, elastomeric foam, with its higher cost and higher temperature resistance, is primarily a product in industrial settings. K-Flex worked with a distributor, Sunbelt Inc., in the southeast for several years. Sunbelt began working with Armacell in early 2017, and almost immediately thereafter terminated its business arrangement with K-Flex. K-Flex alleges that termination was due to Armacell's coercion, which forms the basis for the instant complaint. K-Flex has alleged four separate claims against Armacell: violations of Sections 1 and 2 of the Sherman Act, a violation of the Clayton Act, and a violation of North Carolina's Unfair and

Deceptive Trade Practices Act. This Court has subject matter jurisdiction on the basis of a federal question over the federal law claims, and exercises supplemental jurisdiction over the remaining state law claim under 28 U.S.C. §1367.

## ANALYSIS

Defendant's motion to dismiss the claims is made under Rule 12(b)(6) of the Federal Rules of Civil Procedure. A Rule 12(b)(6) motion tests the legal sufficiency of the complaint. *Papasan v. Allain*, 478 U.S. 265, 283 (1986). When acting on a motion to dismiss under Rule 12(b)(6), "the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir.1993). A complaint must allege enough facts to state a claim for relief that is facially plausible. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Facial plausibility means that the facts pled "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," and mere recitals of the elements of a cause of action supported by conclusory statements do not suffice. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint must be dismissed if the factual allegations do not nudge the plaintiff's claims "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

However, the Court need not accept a complaint's "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement." *Nemet Chevrolet Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009). Although complete and detailed factual allegations are not required, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions." *Twombly*, 550 U.S. at 555 (citations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere

conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). Plaintiff has four claims based in the same conduct by the defendant.

I. Sherman Act, §1

A violation of §1 of the Sherman Act occurs when there is an "agreement in the form of a contract, combination or conspiracy that imposes an unreasonable restraint on trade." *Oksanen v. Page Mem'l Hosp.*, 945 F.2d 646, 702 (4th Cir. 1991). When the restraint is vertical, that is, when the restraint is between two parties at different distribution levels, more is required for the restraint to be unreasonable than if the restraint is at the same level. Vertical restraints are often economically useful, so courts generally apply the "rule of reason" analysis to determine whether vertical restraints are permissible. *See Cont'l Airlines, Inc. v. United Airlines, Inc.*, 277 F. 3d 499, 509 (4th Cir. 2002). To sustain a claim under the rule of reason, a plaintiff must allege that defendant's actions unreasonably restrained trade in a plausible market. *Id.* Plaintiff must also allege a conspiracy or other agreement that would operate in restraint of trade. *AM. Needle, Inc. v. Nat'l Football League*, 560 U.S. 183, 190 (2010). Parallel conduct is insufficient. A plan is required.

Therefore, the first question is whether plaintiff has alleged facts regarding a particular market—both a product market and a geographic market. Second, the plaintiff must argue there is a contract or conspiracy. Here, such an allegation must include facts that, taken in the light most favorable to the plaintiff, would show that Armacell actually made agreements in order to restrain trade. K-Flex has pled enough facts to sustain a claim upon which relief can be granted.

First, K-Flex has alleged both a product market and a geographic market that would support its claims. Determining what product market is appropriate requires a "plenary"

examination, covering "the facts peculiar to the business," among other concerns. *Cont'l Airlines, Inc. v. United Airlines, Inc.*, 277 F.3d 499, 509 (4th Cir. 2002) (internal quotation marks omitted). Products that have "reasonable interchangeability for the purposes for which they are produced" belong in the same market; therefore, it follows that products that are not interchangeable are not in the same market. *United States v. E. I. du Pont de Nemours & Co.*, 351 U.S. 377, 404 (1956). At this stage, K-Flex's market allegations are sufficient to go forward. K-Flex has pled facts to show that there is a separate market for elastomeric foam insulation, as opposed to PE foam or other kinds of insulation. Elastomeric foam is made from different material, has different characteristics and price points, and is primarily used in different settings. The fact that K-Flex does not manufacture PE foam also bolsters its claim.

Second, K-Flex's allegations of a geographic market are plausible. The appropriate geographic market is "the area within which the defendant's customers…can practicably turn to alternative supplies if the defendant were to raise its prices." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 441 (4th Cir. 2011). The market can be the entire nation. *Brown Shoe Co. v. United States*, 370 U.S. 294, 377 (1962). In support of this domestic market definition, K-Flex has alleged facts to show that because this insulation is so expensive to transport, it would only be made in the United States for United States consumption. Additionally, K-Flex has argued that the coercion taking place in the southeast will have effects throughout the domestic market.

K-Flex can also sustain a claim that there was an agreement. While a conclusory allegation of conspiracy is not enough, K-Flex has alleged more than that. Plaintiff has claimed that Armacell is working directly with Sunbelt and other distributors to exert control over the marketplace, to the detriment of the free flow of trade. Plaintiff has claimed that its own

distribution agreement was terminated due to Armacell's pressure. The allegations that this restraint on competition will harm competition and lead to increased prices state a claim upon which relief could be granted.

## II. Sherman Act, §2

In order to violate Section 2 of the Sherman Act, a defendant must "monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce amount the several States." 15 U.S.C. § 2. Therefore, either an actual monopoly or an attempt at monopoly would be caught by this section.

### A. Monopoly

In an actual monopoly claim, there are two required factors: the possession of monopoly power, and the willful acquisition or maintenance of that power. *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 441 (4th Cir. 2011). The fortunate windfalls of good business are insufficient. Actual monopoly power means predominance in a particular geographic and product market. The Fourth Circuit has found predominance when 70% of the market was controlled by one player, *White Bag Co. v. Int'l Paper Co.*, 579 F.2d 1384, 1387 (4th Cir.1974), and other circuits have gone lower. *See Domed Stadium Hotel, Inc., v. Holiday Inns, Inc.*, 732 F.2d 480, 489 (5th Cir. 1984) ("A defendant must have a market share of at least 50 percent before he can be guilty of monopolization.") As was discussed above, K-Flex has successfully alleged a particular product—elastomeric foam insulation—in a particular area—the United States. K-Flex has also alleged that Armacell has an outsize presence in that market, as it makes 70% of all elastomeric foam insulation. These facts are enough to sustain a claim of actual monopoly power.

Possession of monopoly power will not be found unlawful unless it is accompanied by an element of anticompetitive conduct. This willful acquisition or maintenance shifts the activity from being lucky to being culpable. Anticompetitive conduct is conduct designed to "foreclose competition, gain a competitive advantage, or destroy a competitor." *Eastman Kodak Co. v. Image Technical Services, Inc.*, 504 U.S. 451, 482-83 (1992). That is to say, a de facto existence of a disproportionate market share is not itself alone enough to sustain a monopoly claim. Some sort of "predatory" behavior is necessary. *M & M Med. Supplies & Serv., Inc. v. Pleasant Valley Hosp., Inc.*, 981 F.2d 160, 166 (4th Cir. 1992).

Here, the anti-competitive conduct at issue is tying and exclusive dealing. Plaintiff's tying allegations are sufficient to state a claim on this element. A tying arrangement is "an agreement by a party to sell one product but only on the condition that the buyer also purchases a different (or tied) product." *It's My Party, Inc. v. Live Nation, Inc.*, 811 F. 3d 676, 685 (4th Cir. 2016). Tying has four elements, which are simply a separation of the above idea into components: a tying and a tied product, actual coercion by seller to buyer, the ability to coerce, based on economic power, anticompetitive effects, and some connection to interstate commerce. *See Georgia-Pac. Consumer Prod. LP v. Von Drehle Corp.*, 645 F. Supp. 2d 532, 540 (E.D.N.C. 2009). Tying, when coercive, as opposed to efficient, is anticompetitive on its face. *See It's My Party, Inc.*, 811 F. 3d at 684. A single tying arrangement merits prohibition under the law when it has substantial effects in commerce. *Advance Bus. Sys. & Supply Co. v. SCM Corp.*, 415 F.2d 55, 63 (4th Cir. 1969).

K-Flex has alleged that Armacell, which has 90% of the market of P.E. foam, only agreed to sell its P.E. foam to Sunbelt if Sunbelt also agreed to sell its elastomeric foam, thus tying the two types of insulation together. K-Flex alleged that this was the result of coercive pressure by

Armacell. And K-Flex has alleged that this arrangement has substantial economic effects, because Sunbelt and K-Flex had previously been doing 7 million dollars' worth of business. These facts, taken in the light most beneficial to the plaintiff, support a claim for tying such that a dismissal is not warranted. K-Flex's allegation that Armacell has used its market power to force distributors to carry its products is plausible.

An exclusive dealing arrangement, while not per se illegal, will violate antitrust laws if it is "likely to foreclose the entry into a substantial part of the market of products that compete with the products benefitting from" the arrangement. *Chuck's Feed and Seed Co. v. Ralston Purina Co.*, 810 F.2d 1289 (4th Cir. 1987). At this stage in the pleadings, the substantiality of the market does not need to be pled with specificity. *See E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 452 n. 12 (4th Cir. 2011).

Here, K-Flex has alleged facts that sustain a claim of exclusive dealing such that its claim should not be dismissed. It has alleged that Armacell has an exclusive-dealing arrangement with the distributor, Sunbelt, that forecloses any opportunity for participation by any other insulation manufacturer. Because of Sunbelt's status as a high-volume distributor in the southeast, K-Flex has alleged enough facts to sustain claim.

### B. Attempted Monopoly

An attempted monopoly is distinct from an actual monopoly claim only in the status of the market control in question. In its attempted monopolization claim, K-Flex alleges the same facts that sustain its actual monopolization claim. Therefore, a detailed exposition of them is not needed. Because K-Flex's claim of an actual monopoly is not an appropriate candidate for dismissal, neither is its claim for attempted monopoly.

III. Clayton Act

The Clayton Act provides a remedy for exclusive-dealing claims. 15 U.S.C. §14. There are three requisite elements: an arrangement, in a line of commerce and area of effective competition, that forecloses competition in a substantial share of the relevant market. *Tampa Elec. Co. v. Nashville Coal Co.*, 365 U.S. 320, 327 (1961).

Plaintiff has stated a Clayton Act claim for substantially the same reasons as it has stated Sherman Act claims. First, K-Flex has put forward enough facts to show there is a particular line of commerce: elastomeric foam plumbing insulation. The commerce is taking place in a particular area: the geographic U.S. Plaintiff has alleged a particular arrangement between Armacell and Sunbelt in order to exclusively deal Armacell's elastomeric foam. Finally, this exclusive dealing arrangement forecloses competition in a substantial share, because Armacell makes 70% of the country's elastomeric foam, K-Flex is one of its only competitors, and the distributor that is the basis of the arrangement does millions of dollars in business. These facts, taken as true, suffice to sustain a claim for relief under the Clayton Act.

IV. Unfair and Deceptive Trade Practices Act

Likewise, plaintiff K-Flex has alleged facts that suffice to state a claim upon which relief could be granted under the North Carolina Unfair and Deceptive Trade Practices Act. N.C.G.S.A. § 75-1.1.

The statute is coextensive with the Sherman Act, as "proof of conduct violative of the Sherman Act is proof sufficient to establish a violation of the North Carolina Unfair Trade Practices Act." *ITCO Corp. v. Michelin Tire Corp., Commercial Div.*, 722 F. 2d 42, 48 (4th Cir. 1983). Because K-Flex has alleged facts sufficient to sustain a claim under both Section 1 and

Section 2 of the Sherman Act, it has also stated a claim under the Act, and further inquiry into the factual allegations discussed earlier is unnecessary.

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss [DE 11] is DENIED.

SO ORDERED, on this 24 day of October, 2017.

*Terrence W. Boyle*
TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE